Omer M. HARRIS, Plaintiff-Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.

No. 12492.

United States Court of Appeals Sixth Circuit.

Feb. 29, 1956.

Charles W. Miles, III, Union City, Tenn., Carmack Murchison, Jackson, Tenn., for appellant.

Robert P. Adams, Trenton, Tenn., Sam C. Nailling, Union City, Tenn., on brief, for appellee.

Before SIMONS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Omer Harris, appellant, while riding as a passenger in an automobile owned by his son, Ralph, was injured when the car went out of control and ran into an embankment. He brought a negligence action against his son and recovered a judgment for personal injuries in the amount of $15,000 in the state court of Tennessee. The son, Ralph, was insured by appellee company against liability to the extent of $10,000. Appellant thereafter sued the insurer for this amount in the state court; and the suit was removed to the district court and tried before the district judge without a jury. The court filed findings of fact, conclusions of law, and entered judgment of dismissal; and from such judgment, Omer Harris appeals.

Appellee insurance company defended the action on several grounds. It contended that the insured was guilty of making false representations in his application for insurance with intent to deceive the insurance company; and, further, that, by reason of such false representation, the risk was increased, and the company thereby damaged. Appellee further defended upon the ground that Ralph Harris, the insured, failed and refused to cooperate with the insurance company, as required by the policy provisions, in order to enable the company to make proper preparation of its case to determine whether there was a genuine defense and in negotiations for settlement.

The false representation claimed to have been made by Ralph Harris in his application for the policy of insurance was that, in reply to a question whether he had any physical defect, he answered, no. Appellee insurance company introduced evidence that he suffered from epilepsy. Appellant contended that epilepsy was not a physical defect but a disease. The insurance company contended that it was a physical defect. After much expert testimony which evaded the real question, the trial judge, during examination of the insurance company's

principal expert witness, Dr. R. M. Darnell, went to the crucial point with the question:

"Doctor, in the medical sense, would epilepsy be classified as a physical defect? A. Well, sir, we consider epilepsy as a symptom complex of an illness, and not as a physical defect in itself."

In the light of this expert medical testimony from the insurance company's witness, which was uncontradicted, the fact that Ralph Harris had epilepsy did not render fraudulent or false the answer in his application for insurance, that he had no physical defect.

It appears, however, from the evidence, that some ten years before he applied for the policy of insurance, Ralph Harris had received head injuries in an automobile accident which had resulted in the formation of a scar on his brain tissue. According to the medical witnesses, such a scar, in some cases, affects one's mental condition, and in some cases, it does not, but in the expert opinion of a neurosurgeon who had examined Ralph Harris several times after the accident, the scar on his brain tissue was the cause of a convulsive disorder from which he suffered on repeated occasions. The convulsive disorder was epilepsy. It appeared that a driver's license would not be issued by the state to anyone who was known to be suffering from epilepsy. The insured stated that he had nothing more than "crossed nerves" which had caused him to have "spells." There is no evidence that any physician or anyone else told him he had crossed nerves, which, as far as the evidence goes, is a nonexistent condition. As to the scar on the brain, it was revealed to the neurosurgeon by an X-ray film. This was a physical defect. But Ralph Harris was never told by anyone that he had a scar on his brain and did not know it.

Section 6126 of Williams' Code of Tennessee provides:

"No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increase the risk of loss."

The district court found that scar tissue on the brain is a physical defect; that it exerts pressure on the brain and causes epilepsy; that the statement in the application for insurance by Ralph Harris setting forth that he had no physical defect was false; that such representation increased the risk of loss under the policy; that Ralph Harris suffered from epileptic seizures; and that the insurance company would not have issued the policy if it had known the true facts.

In Columbian National Life Ins. Co. v. Harrison, 6 Cir., 12 F.2d 986, Judge Denison, in speaking for the court, held that a false representation in an application for insurance which increased the risk, avoided the policy, under the statute of Tennessee above set forth, even where the representation was made in good faith. In view of circumstances hereinafter discussed, it is to be noted that in the Harrison case, supra, the express terms of the insurance policy set forth that it was issued in consideration of the statements made in the application, and that such statements were actually copied into, and incorporated in the policy itself, which is contrary to the facts in the instant case. See Standard Life Ins. Co. of the South v. Strong, 19 Tenn.App. 404, 89 S.W.2d 367; Robbins v. New York Life Ins. Co., 18 Tenn.App. 70, 72 S.W.2d 788; Insurance Co. v. Lauderdale, 94 Tenn. 635, 30 S.W. 732; Boyd v. Insurance Co., 90 Tenn. 212, 16 S.W. 470; Catron v. Tennessee Ins. Co., 25 Tenn. 175. Whether a representation results in an increase of risk is a question of law for the court. Volunteer State Life Ins. Co. v. Richardson, 146 Tenn. 589, 244 S.W. 44, 26 A.L.R. 1270; Mutual Life Ins. Co. v. Dibrell, 137 Tenn.

528, 194 S.W. 581, L.R.A.1917E, 554. See American Eagle Fire Ins. Co. v. Peoples Compress Co., 10 Cir., 156 F.2d 663.

The statement of the insured, in his application for insurance, that he had no physical defect was a misrepresentation which, even though innocently made, increased the risk of loss; and, unless precluded by other considerations, under the provisions of the statutes of Tennessee, above mentioned, would avoid the policy.

■ However, an insurance policy is a contract, and, as in other contracts, the fundamental question to be determined is what was the real intention of the parties. Milwaukee Mechanics Ins. Co. v. Davis, 5 Cir., 198 F.2d 441. "Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense, unless such terms have acquired a different and technical sense in commercial usage or unless it clearly appears from the context that it was the intention of the parties to use such terms in a technical or peculiar sense." 29 Am.Jur., Section 159. We are interpreting a contract and are concerned only with the sense in which its words were used. Aschenbrenner v. United States F. & G. Co., 292 U.S. 80, 84, 54 S.Ct. 590, 78 L.Ed. 1137. It is our function and duty to ascertain and effectuate the lawful intention of the parties. New York Life Ins. Co. v. Bennion, 10 Cir., 158 F.2d 260. The application for a policy is not the contract but a mere offer or proposal for a contract of insurance. Mutual Benefit Life Ins. Co. v. Robison, 8 Cir., 58 F. 723; Metropolitan Life Ins. Co. v. Whitler, 7 Cir., 172 F.2d 631. The application for a policy of insurance becomes a part of the contract if it is made a part thereof by the express terms of the policy; and in a number of jurisdictions, statutes have been enacted which require a copy of the application to be attached to the policy applied for. In the instant case, the application was not attached to, or incorporated in, or referred to, in the policy. In Tennessee, the applicable statute provides, insofar as here relevant, that every policy of insurance issued to any citizen of the state by any insurance company or association doing business in the state, except fraternal beneficiary associations and mutual insurance companies or associations operating on the assessment plan, or policies of industrial insurance, shall contain the entire contract of insurance between the parties to the contract.[1] Under this statute, an insurance company, unless it is within the exceptions therein specified, cannot take advantage of any breach of the terms of the application when it does not attach the application to, or incorporate it in the policy. Arnold v. New York Life Ins. Co., 131 Tenn. 720, 177 S.W. 78. Appellee insurance company, however, is within the exceptions mentioned in the statute, since it is a mutual insurance company.

However, in this case, the express provisions of the contract between the insured and the insurer set forth:

"Declarations. By the acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

---

[1] Section 6086 of Williams' Tennessee Code, Annotated, provides: "Every policy of insurance, issued to or for the benefit of any citizen or resident of this state on or after the first day of July, 1907, by any insurance company or association doing business in this state, except fraternal beneficiary associations and mutual insurance companies or associations operating on the assessment plan, or policies of industrial insurance, shall contain the entire contract of insurance between the parties to said contract, and every such contract so issued shall be held as made in this state and construed solely according to the laws of this state."

The above provision refers to the heading, "Declarations," on the first page of the policy, which set forth the name of the insured, the type of the automobile insured, the occupation of the insured, and similar information. No reference is made in the policy to the application. The agreement in the insurance contract that "this policy embodies all agreements existing between [insured] and the company" is conclusive that it is not based in any way upon the statements in the application. Of course, a fraudulent representation in the application inducing the execution of a policy of insurance can generally be availed of to avoid the policy, just as any contract can be avoided for fraud *ab initio*. And it may well be that under Section 6086 of Williams' Tennessee Code Annotated, above mentioned, the insurance company in this case, if it had not expressly agreed otherwise, could rely, as a defense, upon the statements in the application, which were false but not fraudulent, even though it had not attached the application to, or incorporated it in the policy, in view of the fact that mutual insurance companies are excepted from the requirement that the policy shall contain the entire contract of insurance. But the insurance company, in this case, in its contract of insurance, foreclosed itself from relying on the statements in the application by its stipulation that the policy itself embodied all the agreements between the company and the insured. Mere false representations in an application for insurance, as distinguished from a fraudulent inducement or procurement of a policy of insurance, cannot be relied upon when the insurance contract, by its express terms, provides that the policy itself embodies all the agreements between the parties. The application in this case was no part of the contract of insurance. By the terms of the insurance contract, the policy was issued "in reliance upon the truth of * * * representations" set forth in the policy, and not upon statements in the application. Similarly, in those cases where statutes provide that the policy shall contain the whole contract, a false but not fraudulent representation in an application for insurance cannot be relied upon to avoid a policy where the application is not made a part of the policy. See 29 Am.Jur., Section 173, and cases collated thereunder. It is our conclusion that the application by the insured was never a part of the policy, and because of the express agreement of the parties, no statements therein can be relied upon to avoid the policy.

Appellee insurance company claims that it was relieved from liability under the policy for the reason that Ralph Harris, the insured, failed to cooperate with the insurer, as required by the policy provisions. It contends that a comparison of the insured's written and oral statements before the trial in the state court, with his sworn testimony in that trial, together with his attitude and conduct preceding and during that trial and his deliberate and willful falsification of material facts, shows insured's complete failure to cooperate with the company.

In support of its contention, the company submits that the insured denied having been an epileptic, or having a physical defect, until the trial of the personal injury action in the state court. It appears that, prior to the execution of the policy, the insured was not asked whether he suffered from epilepsy, and such a representation was not included in the application for insurance. As far as a physical defect goes, epilepsy is not, according to the undisputed evidence of the insurance company's witnesses heretofore mentioned, a physical defect. The insurance company shows that in the statement given by Ralph Harris to the claim agent after the accident in which appellant was injured, Ralph stated: "I had * * * my complete facilities about me, and my mind functioning as usual. * * * I must have dropped off to sleep at this very time * * * I have been driving for about fifteen years, and this is the first time I have ever gone to sleep at the wheel of a vehicle. I have never been subject to any spells of drowsiness, or otherwise, at any time." This statement was drawn up by

**538**

a claim agent of the insurance company and signed by Ralph.

It is claimed by the insurance company that contrary to his written statement, the insured testified thereafter that he had been drowsy and dropped off to sleep. It appears that he had told his physician after he recovered consciousness that he did not know what happened, but that he "reckoned I just went to sleep, I just don't know." On the witness stand, he testified: "I was sleepy and drowsy that morning." It is insisted that these statements were a willful falsification of the facts and misled the insurance counsel in preparing for trial in that he had previously told him that he had no warning whatever that he was "going to lose consciousness." It appears, then, that the insured told his physician at the hospital, when he first discussed the accident, that he thought he had fallen asleep. He told the claim agent he must have dropped off to sleep. He told counsel for the insurance company before the trial that he suddenly lost consciousness and fell asleep; and he testified on the trial that, as far as he knew, he just went to sleep. As to appellee's claim that the insured had told counsel that he had no warning that he was going to fall asleep, and afterward contradicted this statement by saying that he was a little drowsy, the insured, being pressed on this point, on examination by counsel for the insurance company, testified: "I had no warning whatsoever other than drowsiness and sleepy. Is that warning? What would you say that is?"

From the foregoing, it cannot be said that the insured failed to cooperate by testifying that he was drowsy and had fallen asleep instead of testifying that he had lost consciousness suddenly. Moreover, in spite of the insured's insistence that he did not have spells or epileptic seizures, the insurance company was not prejudiced in introducing the most comprehensive proofs from the doctors who had treated the insured and from the insured's father who was the plaintiff in the personal injury case,

that the insured had suffered from epileptic attacks. Thus, in the statement given to the claim agent, Ralph told that Dr. Leigh K. Haynes was the physician who treated him after the accident, and he authorized the counsel for the insurance company to interview and discuss the matter with Dr. Haynes; and, from Dr. Haynes, counsel for the insurance company learned all about the epileptic attacks from which Ralph suffered. He also learned from Dr. Haynes that Dr. Raskind, the neurosurgeon, had treated Ralph; and from Dr. Raskind, counsel further learned of the scar on Ralph's brain tissue and the treatment which was administered for the repeated attacks of epilepsy from which he suffered. On the trial, Ralph's father, appellant herein, testified as to these epileptic seizures. Ralph himself testified that he had spells, but denied that they were epileptic—although he could have had no knowledge as to whether a spell is epileptic or not. During the trial in the state court, counsel for the insurance company, who was also representing Ralph, introduced in evidence the depositions of Dr. Haynes and Dr. Raskind disclosing that Ralph had repeatedly suffered from epilepsy. The defense of the law suit, by the insurance company, was not prejudiced by the need of proof that the insured had epileptic seizures; and this was practically the sole defense relied upon in the state court suit for personal injuries brought by appellant against his son, Ralph. In that suit, the issue was whether, at the time the car ran into the embankment, Ralph suffered an epileptic seizure or fell asleep. If he suffered an epileptic seizure, he would not have been guilty of negligence and no verdict for damages could have been returned. Appellant's claim was based on the theory that the accident happened when Ralph fell asleep. This issue was strenuously contested in the state court.

In the state court case, the trial judge, in his charge to the jury, instructed them that if they found that Ralph Harris had lost control of his automobile by going to sleep and causing the car to crash into

the embankment, and if they found that he had omitted to do something that an ordinarily prudent person would have done, that would raise an inference of negligence on his part, and, if unexplained or if no circumstances tending to excuse or justify his conduct were proved, he would be liable. On the other hand, the court instructed the jury that if, immediately before the crash, the insured was suddenly and without warning seized with an attack of epilepsy which made it impossible for him to control the car, and, as a result, the accident occurred, there would be no negligence and no liability. In this regard, the trial court gave the following special instruction:

"I further charge you, gentlemen of the jury, that if you should find that the defendant was an epileptic and that this fact was known to his father, but you should further find that at the time of this accident he went to sleep, not as a result of a sudden seizure of epilepsy, then I charge you that the plaintiff would not be guilty of contributory negligence in this case, if he exercised reasonable care for his own safety. * * * "

The issue before the jury, therefore, was whether the accident resulted from the insured's falling asleep or from an epileptic seizure. When the judgment awarded to appellant was appealed by the insurance company to the Tennessee Court of Appeals, that court, in its opinion affirming the judgment, stated:

"The case as presented to the jury, turned almost exclusively on whether the accident happened as the result of Defendant's having had an epileptic seizure, in which case there would be no liability, or whether it happened as the result of his having fallen asleep at the wheel, in which case there was liability. The jury has found that it occurred as the result of his having fallen asleep at the wheel. As far as this case is concerned, that concludes the matter."

From what we can judge of the record, the insurance company was not prejudiced by anything the insured did in presenting its proof to the jury showing that the insured was a sufferer from epileptic attacks. In fact, the matter was squarely presented during the trial of the instant case when appellant's counsel, during the testimony of the attorney for the insurance company who had taken the stand on behalf of his client, asked:

"Q. Actually, Mr. Nailling, the point I am getting at, * * * defense of that lawsuit was never seriously handicapped at any time by the need of or adequacy of the proof that the boy had these epileptic seizures, was it, just except a little work on the part of the lawyer is all it required, wasn't it? A. I will answer it this way. I was entitled to a full, fair and complete statement of this accident from the insured. I never did get it."

This cannot be said to be proof that any lack of cooperation or discrepancies in statements by the insured were prejudicial in effect. About the only additional proof that appellee company could have adduced in presenting its case was an outright admission from the insured that the accident happened while he had an epileptic seizure; and it is conceded by the medical expert witnesses of the insurance company that the insured would not have been able to remember whether he had fallen asleep or suffered an epileptic attack. "It is well settled that, to relieve the insurer of liability on the ground of lack of cooperation, discrepancies in statements by the insured must be made in bad faith and must be material in nature and prejudicial in effect." State Automobile Mut. Ins. Co. of Columbus, Ohio v. York, 4 Cir., 104 F. 2d 730, 733.

In sum, while the question whether the insured fell asleep or suffered an epileptic attack was for the jury in the state court trial, the proofs that the accident resulted from an epileptic seizure were so strong and persuasive and so ably mar-

shalled and advanced by counsel for appellee that we would have had no doubt, had we been the triers of fact, in arriving at a judgment in favor of the appellee. From all of the foregoing, we cannot say that appellee was prejudiced by any statements of the insured, in presenting its proofs, to the effect that the accident happened as the result of an epileptic seizure, for it knew all the facts and circumstances surrounding the susceptibility of the assured to such attacks, before the actual trial of the case.

With regard to the question of the cooperation of the insured with the insurer, there is one disturbing circumstance. When preparing for trial, counsel for the insurance company asked the insured why he had not informed them that he had epilepsy. The insured heatedly replied that he did not have epilepsy and that counsel was "a damn liar." Counsel is an outstanding lawyer of integrity and reputation, as well as ability, as his conduct of the various trials relating to this accident and liability therefor demonstrate, and he was, at all times, engaged in faithfully and honestly representing the interests of his client. The insured seems to have been sensitive on the point of his affliction with epilepsy, which he chose to call spells; but such language by the insured to an honorable member of the bar engaged to defend both the insured and the insurer, is inexcusable and deplorable. Yet the crucial consideration is not whether, on this occasion, there was unjustifiable language used by the insured in speaking to counsel for the insurance company, but whether the insured's conduct prejudiced the company or prevented it from introducing its proofs and fully presenting its case before the jury; and it is our conclusion that it did not.

Other claimed false statements by the insured during preparation for trial were not prejudicial to the insurance company in the presentation of its case to the jury. "The mere inadequacy or untruthfulness of a statement made by the assured to the insurer as to the circumstances of an accident does not of itself necessarily constitute a breach of a cooperation clause." Rochon v. Preferred Accident Ins. Co., 118 Conn. 190, 171 A. 429, 98 A.L.R. 1472. And the fact that the insured stated he would never permit his father to settle for the amount of his medical expenses cannot be held to be a failure to cooperate, especially since such an offer was never more than contemplated by the counsel for the insurance company, and no offer was ever made by the company.

On our review of the whole case, it may be said that if epilepsy were a physical defect instead of a disease, the insured's representation that he had no physical defect would have supported a finding of fraudulent misrepresentation to the insurance company, avoiding the policy. If the application wherein the insured innocently stated that he had no physical defect had been made a part of the "Declarations" of the policy of insurance, it would have also avoided the insurance because, though innocent, it was false, and increased the risk. To avail itself of insured's statement that he had no physical defect, the insurance company would either have to show that it was made with intention to defraud, or that such representation was a part of the policy.

If it were not for certain procedures of the insurance company, it would seem strange that no inquiry was made as to whether the applicant was subject to epilepsy or similar afflictions, before issuance of a policy; but it appears that while this is information that is of paramount interest to the insurance company, as is also information with respect to an applicant's drinking habits, whether he is emotionally stable, of sound mind, and of good moral character, no questions are asked with respect to any of these matters, inasmuch as the company generally relies upon the agent and upon a private investigation of each applicant, which was not made in this case. The reasons given why such an investigation was not made were because the mileage—or travel expense—required for the investigation was excessive; and that

the agency issuing the insurance had been profitable, it appearing that the company investigates more readily applications made to an agency which has been unprofitable.

It is our conclusion that there was no proof that the insured, by any statement in his application, was guilty of fraudulent misrepresentation inducing the contract of insurance; that the statement that the insured had no physical defect was not a part of the insurance contract relied upon by the insurer; and that there was no failure to cooperate on the part of the insured to the prejudice of the insurance company.

In accordance with the foregoing, the judgment of the district court is reversed and the case remanded for entry of a judgment in favor of appellant, as set forth in the complaint in the district court.