GOVERNMENT EMPLOYEES INSURANCE COMPANY, a body corporate,

v.

Moses A. CAIN, Katherine Cain, Monroe Thompson, Joseph Washington, individually and as father and next friend of Silas Washington, an infant, Silas Washington, an infant, The Equitable Trust Company, a body corporate, and Unsatisfied Claim and Judment Fund.

Civ. A. No. 14010.

United States District Court
D. Maryland.

Feb. 20, 1964.

590

Frederick J. Green, Jr., and William J. Evans, Baltimore, Md., for plaintiff.

George Washington, pro se.

Moses A. Cain and Katherine Cain, pro se.

Hyman C. Ullman, Baltimore, Md., for Monroe Thompson.

Walter R. Tabler, Baltimore, Md., for The Equitable Trust Co.

Thomas B. Finan, Atty. Gen., of Md., and Gerard Wm. Wittstadt, Asst. Atty. Gen., of Md., for Unsatisfied Claim and Judgment Fund.

WINTER, District Judge:

Plaintiff, Government Employees Insurance Company (hereafter "Insurer"), seeks a declaratory judgment that it validly rescinded a Family Automobile Policy of insurance issued to defendant Moses A. Cain with regard to his 1957 Pontiac Catalina automobile. Joined as defendants with the named insured are his wife, Katherine Cain, certain persons making claim for personal injury and property damage as a result of an automobile accident had by Katherine Cain, and the Unsatisfied Claim and Judgment Fund, to which the tort claimants will be relegated, if judgments are obtained by them and a valid rescission of the policy is declared.

Mr. Cain, the named insured, applied for a policy of insurance in North Caro-lina, on or about September 14, 1961. At that time he was covered by an automobile liability insurance policy by another insurer, affording public liability coverage. This policy did not expire until March 13, 1962, therefore, the Insurer issued only a collision and comprehensive policy for the period September 15, 1961 to September 15, 1962. On March 13, 1962, having returned to Baltimore City, the named insured asked to have his policy amended to include coverage for public liability to replace the policy issued by the other insurer. No new application was executed. The policy issued for the period September 15, 1961 to September 15, 1962 was cancelled, and a new policy, including coverage for public liability, issued in its place. The effective date of the new policy was March 13, 1962, and it was to remain in effect until March 13, 1963.

On June 7, 1962, Mrs. Cain had an epileptic seizure and lost control of the insured automobile, while driving it south on Liberty Street, in Baltimore City. The automobile left the roadway and traveled to the west, across the sidewalk, allegedly injuring two pedestrians. It came to a stop by crashing into a building of The Equitable Trust Company. Both pedestrians have sued Mrs. Cain, and The Equitable Trust Company has made claim on Mr. and Mrs. Cain.

The essence of this litigation concerns the application for automobile insurance executed by Mr. Cain on September 14, 1961. The essential portion of the form of application follows:

"Application For Automobile Insurance With The GOVERNMENT EMPLOYEES INSURANCE COMPANY

\* \* \* \* \* \*

"I (we) declare that the answers to the questions listed below are true and hereby request the Company in reliance thereon to issue the policy of insurance applied for herein and any renewal thereof.

"\* I understand and agree that if the answers to questions 7, 8, 9 or 10, or any of them, are other than

"No", the insurance requested will not be effective until approved by the Company. This application and the policy of insurance when issued will constitute the entire agreement between the applicant and the Company.

"The Company agrees that if the applicant is eligible under Item 1 below, if all questions are answered, if the required combination of coverage is requested, if the application is signed, if the required remittance is enclosed and if the true answers to questions 7, 8, 9 and 10 are "No", the insurance applied for will be effective as of:

"☐ time and date of acceptance by Company Representative, or

"☐ as of 12:01 A.M. on ———, 19——, but in no event prior to acceptance by Company's Representative.

"IMPORTANT! ISSUANCE OF A VALID POLICY IS DEPENDENT UPON YOUR TRUE ANSWERS.

\*     \*     \*     \*     \*     \*

" \*9. Are you or any operator of the automobile physically or mentally impaired? (One eye, leg, arm, paralysis, etc.) ——————
If 'yes', see above \* (Give full information on separate sheet)"

In response to question 9, Mr. Cain answered "NO."

It is this answer which serves as the basis for claim for declaratory relief because after the accident the Insurer learned of the fact that Mrs. Cain, whom the named insured had described as the only operator of the car in addition to himself, suffered from epilepsy and that the accident occurred as a result of an epileptic seizure. As a consequence, on July 19, 1962, the Insurer gave Mr. Cain written notice that it was rescinding the policy of insurance, and tendered to him its check for $98.17 in full refund of the premium paid.

From the medical testimony that was presented, I find that epilepsy is a physical (as distinguished from mental) impairment, and that Mrs. Cain who, at the time of the accident was approximately twenty-seven years old, had suffered from epilepsy since she was approximately twelve years old. Mrs. Cain unquestionably knew she had epilepsy; Mrs. Cain had had at least two such seizures during the time that the parties were married, each in connection with the birth of a child; and during her married life Mrs. Cain received constant medication to control her seizures. In view of these facts, I find that Mr. Cain, a college graduate and captain in the United States Army, was aware of his wife's malady at the time he completed the application, despite his testimony to the contrary.

There is no question that the accident had by Mrs. Cain resulted from one of these seizures. Likewise, there is no question that the fact of Mrs. Cain's epilepsy materially increased Insurer's risk, or that, had it known such fact, Insurer would not have issued the policy. It is clear that Insurer relied on the application and the answers thereto in issuing the policy.

■ Since the policy sought to be avoided was issued to Mr. Cain in Maryland, pursuant to his request to a Maryland representative of Insurer at a time when Mr. Cain was in Maryland, the parties agree that Insurer's right, if any, to rescind the policy is governed by Maryland law. The pertinent Maryland authorities were collected by Judge R. Dorsey Watkins of this Court in State Farm Mutual Automobile Ins. Co. v. West, 149 F.Supp. 289 (D.C.Md.1957), and were considered more recently by him in Union Trust Co. of Maryland v. Kansas City Life Ins. Co., 197 F.Supp. 471 (D.C.Md.1961), aff'd. 300 F.2d 606 (4 Cir. 1962). No later Maryland cases have been cited by the parties. I concur in Judge Watkins' statement of the Maryland rule, in State Farm Mutual Automobile Ins. Co. v. West, supra, 149 F.Supp. p. 305, viz:

"A material misrepresentation made by an applicant for insurance, in reliance on which a policy is issued to him, renders the policy voidable as

against the applicant and all who stand in no better position, whether such misrepresentation be made intentionally, or through mistake and in good faith * * *."

One of the first questions to be considered in the application of the general rule is the scope of the inquiry made to the applicant. Manifestly, if an applicant is not asked to provide certain information his failure to do so is not improper. It may be said, therefore, that the application of the general rule is subject to the condition precedent that an inquiry directed to the proposed insured must be reasonably designed to elicit from him information which he possesses material to the risk. Only when an inquiry of such scope is made does a consideration of whether there has been a failure to disclose from intention, mistake or even good faith become pertinent, Union Trust case, supra, 197 F. Supp. p. 477; Schloss v. Metropolitan Life Ins. Co., 177 Md. 191, 9 A.2d 244 (1939); Baker v. Continental Casualty Co., 201 Md. 464, 94 A.2d 454 (1953); Harris v. State Farm Mutual Automobile Insurance Co., 232 F.2d 532 (6 Cir. 1956).

The latter case is the only case cited by the parties or found by the Court relating to the failure to disclose the fact of epilepsy. The precise holding in the case is not determinative of the instant case, but it is illustrative of the point that the inquiry directed to the insured must be reasonably designed to elicit from him information which he possesses material to the risk as a condition precedent to the application of the rule that a failure to disclose may provide a basis for avoidance of the policy. In the Harris case, the insured was asked, in his application for insurance, whether he had any physical defect. He replied in the negative when in fact he suffered from epilepsy. A tort creditor obtained judgment against the insured and sued the insurer to collect the judgment. The only medical evidence presented was to the effect that epilepsy was not a physical defect in itself, but rather was "a symptom complex of an illness." Accepting this testimony, the Court concluded that the insured had not answered the inquiry either falsely or fraudulently.

Accepting the medical testimony in this case that epilepsy is not a mental impairment, the Court concludes that the portion of question 9 directed to mental impairment was not incorrectly answered by Mr. Cain, because it was not designed to elicit from him the information concerning his wife's epilepsy which he possessed. Had question 9, insofar as it was directed to physical impairment, been limited to a general inquiry without illustration of physical impairment, the Court would be inclined to conclude that Mr. Cain at least unintentionally misrepresented the risk, and such misrepresentation provided grounds for avoiding the policy. But question 9 was not limited. It gave as illustrations of physical impairment: "One eye, leg, arm, paralysis, etc.," conditions all of which to a layman lacking medical training could be understood as referring to visible and continuous physical deficiencies. True, there was the catchall, "etc." To the extent that it has meaning, the Court concludes that *ejusdem generis* has application, and a person answering question 9 by reference to the specific examples and "etc." could reasonably conclude that epilepsy, the presence of which may be clinically demonstrated, but which manifests itself in gross only sporadically, was not the type of physical impairment inquired about or sought to be disclosed.

The case at bar is like Mutual Benefit Life Ins. Co. v. Wise, 34 Md. 582 (1871). The case passed upon, *inter alia,* whether the jury should have been required to conclude that an answer to the eleventh question on the application, "Has the party [proposed insured] had *any* sickness within the last ten years; if so, what?" was a ground for avoiding the policy when proof was offered to show that for some period in 1860 or 1861 the proposed insured had suffered from "chronic pharyngitis" and the answer

was simply "Pneumonia, in 1862." The tenth question was, "Has the party been afflicted since childhood with disease of the heart, rupture, fits, dropsy, liver complaint, bilious colic, rheumatism, gout, habitual cough, bronchitis, asthma, spitting of blood, consumption, paralysis, apoplexy, insanity, fistula or disease of the kidneys or bladder, and which?" In holding that the trial court did not err in refusing to instruct the jury that a failure to disclose chronic pharyngitis required an avoidance of the policy, the Court made the following statement, supportive of the ultimate conclusion in the case at bar (34 Md. p. 598):

> "His [insured's] attention having been directed by the tenth question to certain diseases particularly named therein, Mr. Wise may have very naturally supposed that the eleventh question had reference to diseases or sicknesses of the same class, and like importance."

Certainly, it cannot be said that question 9, considered in its entirety, reasonably required disclosure of the fact that an applicant, or a member of his family who would operate the insured vehicle, had epilepsy. The law is well settled that ambiguities in policies of insurance must be resolved against the insurer, and this rule is equally applicable to applications for insurance. Schloss v. Metropolitan Life Ins. Co., supra; 13 Appleman, Insurance Law and Practice, (1943 Ed.), § 7585. Thus, to the extent ambiguous, question 9 must be considered not to inquire of a physical impairment of the type suffered by Mrs. Cain.

The Court holds that, viewed objectively, Mr. Cain was not reasonably asked to disclose his wife's epilepsy. His failure to do so thus entitles Insurer to no declaratory relief. In view of this conclusion, other defenses asserted by defendants need not be considered.

Counsel may submit an appropriate form of declaratory judgment.