217 So.2d 632 (1969)
Subscribers at CASUALTY RECIPROCAL EXCHANGE, an Unincorporated Association of Persons By and Through its Attorney-In-Fact, Bruce Dodson, a Reciprocal Insurance Exchange
v.
Lonnie T. WOOLEY, Robert McBroom, Jr., Barney Todd McBroom, Melvin Noblle and Merchants Bank and Trust Company.
No. 45142.
Supreme Court of Mississippi.
January 13, 1969.
Davidson & Beach, Jackson, for appellant.
Ellis & Ellis, Prewitt, Bullard, Braddock & Vance, Vicksburg, for appellee.
*633 GILLESPIE, Presiding Justice:
Casualty Reciprocal Exchange (hereinafter Insurance Company) filed a bill of *634 complaint in the Chancery Court of Warren County against Lonnie T. Wooley (hereinafter Insured) and Robert McBroom, Jr., Barney Todd McBroom, Melvin Nobile and Merchants Bank & Trust Company (hereinafter Third Parties) seeking cancellation of an automobile liability policy. At the conclusion of Insurance Company's case the Court sustained a motion of the defendants to exclude the evidence and dismiss the bill of complaint. Insurance Company appealed.
In determining whether the trial court erred in sustaining the motion to exclude and dismiss, we must assume as true all facts which Insurance Company's evidence fairly tends to establish, together with all reasonable inferences to be deduced therefrom. Laseter v. Sistrunk, 251 Miss. 92, 168 So.2d 652 (1964). The facts are stated in the light most favorable to Insurance Company, consistent with the foregoing rule.
Insured purchased an automobile and was told by the bank that financed it not to drive the car until it was insured. Insured went to the Jabour Insurance Agency in Vicksburg on February 2, 1967, and furnished the Jabour Agency with the description of the automobile and signed an application for insurance. Part 6 of the application as filled out by an employee of the Jabour Agency upon information furnished by Insured is as follows:

 Yes No
 1. Has any driver been involved in any accidents within
 the last three years? X
 2. Has license of any driver ever been revoked or
 suspended? X
 3. Has any company cancelled or refused to renew insurance
 for applicant or any driver? X
 4. Has any driver ever insured through any assigned
 risk plan? X
 5. Has any driver been charged with any moving traffic
 violation? X
 6. Is any driver physically impaired? X
 7. Is any driver required to file evidence of coverage
 under any financial responsibility law? X
 8. Does any driver frequently operate a non-owned
 automobile? X
 9. Has approved driver training court been completed
 by male drivers under 25? (No answer)
 10. Is car used in business other than to or from work? X
 11. Is car driven to work? X
 12. What is annual mileage? _______________
 13. Are passengers other than members of Household
 carried? (No answer)

After the application was filled out and signed by Insured the Jabour Agency determined that the Insured should be issued the policy in accordance with the underwriting rules of Insurance Company. Thereupon, in reliance upon the truthfulness of the answers given by Insured to the questions contained in Part 6 of the application, *635 Jabour Agency issued on behalf of Insurance Company a "Family Combination Automobile Policy" insuring Insured against public liability, medical payments, collision, and other coverage. The total premium of $176.50 was paid and the policy was delivered to Insured. A copy of the policy was later examined by an underwriter at the home office, and based upon the answers to the questions in Part 6 of the application, it was determined that the Insured met the underwriting requirements of Insurance Company.
The first five questions of Part 6 of the application were false. Jabour Agency would not have written and delivered the policy if truthful answers had been given to the first five questions of Part 6 of the application because to do so would have violated the underwriting rules of Insurance Company.
Upon receipt of the daily report of the issuance of the policy, the home office ordered a routine commercial investigation. Upon receipt of the report of the commercial investigation the home office underwriter decided to invoke the cancellation provisions of the policy which require ten days notice to the Insured in event Insurance Company cancels the policy. The commercial investigation report was not admitted in evidence but the underwriter testified that the policy was cancelled because the report indicated that the Insurance Company did not want to write that piece of business, but that Insurance Company did not have enough information to attempt an immediate cancellation. On February 27, 1967, Insurance Company mailed to Insured notice of cancellation stating the policy would be cancelled at noon on March 11, 1967. Insured received this notice on March 10, 1967, the delay being caused by his absence from home. On March 10, 1967, Insured was involved in an accident while driving the automobile described in the policy. This accident gave rise to claims against Insured by Third Parties. In the cancellation notice Insured was notified that the premium would be repaid prorated to the date of cancellation. Jabour Agency refunded $158.60 to Insured by check dated March 18, 1967. The balance of the premium was paid into the registry of the court upon the filing of this suit.
When the Insured reported the accident to Jabour Agency a form was filled in by Insured reporting to the Safety Responsibility Bureau of the existence of the policy advising that agency that the policy was in force. Insurance Company did not disclaim coverage to the Safety Responsibility Bureau. After some investigation by Insurance Company it entered into a nonwaiver agreement whereby it was agreed between Insured and Insurance Company that Insurance Company could investigate the accident of March 10, 1967, without either party waiving any rights whatever. After further investigation Insurance Company denied that there was any coverage at the time of the accident on March 10, 1967, and filed this suit to cancel the policy ab initio because of the fraudulent answers in the application.
The first question for our decision is whether the false statements in the application entitled Insurance Company to rescind this policy absent waiver or estoppel. The statements in the application were false; the answers were supplied by Insured; and they were material to the risk. Insurance Company had a right to rely on these facts. They were made for the purpose of inducing Insurance Company to enter into the insurance contract which it would not have done if true answers had been given. Absent waiver or estoppel, Insurance Company is entitled to have the policy cancelled ab initio. State Farm Mutual Automobile Ins. Co. v. Anderson, 107 Ga. App. 348, 130 S.E.2d 144 (1963); Temperance Ins. Exchange v. Coburn, 85 Idaho 468, 379 P.2d 653 (1963); Metropolitan Life Ins. Co. v. Becraft, 213 Ind. 378, 12 N.E.2d 952, 115 A.L.R. 93 (1938); Minich v. M.F.A. Mutual Ins. Co., 325 S.W.2d 56 (Mo. Ct. App. 1959); Gooch v. Motors Ins. *636 Co., 312 S.W.2d 605 (Mo. Ct. App. 1958); 12 Appleman, Insurance Law & Practice § 7291 (1943).
The next question is whether Insurance Company waived its right to rescind the policy or is estopped to do so. Insured and Third Parties contend that Insurance Company waived its right to avoid the policy because (1) on February 27, 1967, Insurance Company had obtained knowledge from the commercial investigation that Insured was not a desirable risk and did not void the policy, but elected to cancel according to the policy provisions and thus continued it in force until March 11, 1967, and did not at the time of cancellation refund the entire premium, but retained the part that would be earned up to March 11, 1967; and that Insured relied upon the cancellation notice which stated that the effective date of cancellation was March 11, 1967; and (2) the filing by Insured of a statement with the Safety Responsibility Bureau showing insurance coverage of Insured by the Policy in question was known by Insurance Company and prevented Insured's drivers' license from being revoked, and Insurance Company never disclaimed coverage to the Safety Responsibility Bureau.
Insured and Third Parties also contend that because the application was not made a part of the policy and the policy stated that it embodied all the agreements between the parties, the Insurance Company may not rely on the false statements in the application.
We consider the question of waiver and estoppel together. Estoppel arises only when the person claiming the benefit of estoppel has been mislead to his detriment. We are of the opinion that there are no facts upon which an estoppel could arise in this case.
An insurer may waive the right to forfeit or rescind a policy of insurance when the elements of estoppel are not present by recognizing the validity of the policy and continuing it in force after knowledge of circumstances entitling it to avoid the policy. Stonewall Life Ins. Co. v. Cooke, 165 Miss. 619, 144 So. 217 (1932); 16A Appleman Insurance Law & Practice, §§ 9253 and 9303 (1968). Most of the cases supporting this rule hold that slight evidence will suffice to support a finding that the insurer waived the right of forfeiture. In Stonewall Life Ins. Co. v. Cooke, supra, the right to forfeiture involved the nonpayment of premium. However, where fraud on the part of the insured is involved, the rule just stated does not necessarily apply. 16A Appleman, Insurance Law & Practice, § 9303 (1968) is in part as follows:
On the other hand, it must be observed that the retention of a premium after knowledge of a breach of condition will not estop the insurer from denying liability, where such knowledge is not acquired until after a loss has occurred. * * * And some Courts have held that the retention of premiums does not constitute a waiver of breach of conditions or warranties. This was especially true where the insured was guilty of fraud in obtaining the policy. (Emphasis added)
The policy in question provides that Insurance Company may cancel the policy within sixty days of the date issued by giving Insured ten days notice. Insurance Company exercised its right to cancel within sixty days of issuance because it had information from the commercial investigation that indicated the risk was one the company did not want, but it did not have knowledge that several questions in Part 6 of the application had been answered falsely. It did not have information that Insured's license to drive had been revoked or suspended or that another company had cancelled Insured's insurance (Question 2 and 3, Part 6 of the application). If Insurance Company had known these facts it would have asked its agent to pick up the policy for cancellation rather than giving Insured the ten days notice. We are of the opinion that there is no basis *637 for holding that there was a waiver of Insurance Company's right to rescind the policy. The retention of the premium for the period to March 11, 1967, did not constitute a waiver for the Insurance Company since it did not then have all the facts concerning the fraud. The filing by Insured of information with the Safety Responsibility Bureau following the accident of March 10, 1967, and Insurance Company's failure to disclaim coverage to the Safety Responsibility Bureau did not mislead any of the parties to this suit to change their position.
The next question is whether Insurance Company is precluded from rescinding the policy because the application was not attached to the policy, and the policy included an "integration" clause. The policy provides in Section 18 the following:
By acceptance of this policy, the insured named in Item 1 of the declarations agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.
Insured and Third Parties rely on Harris v. State Farm Mutual Automobile Ins. Co., 232 F.2d 532 (6th Cir.1956); Universal Underwriters Ins. Co. v. Snyder, 81 Nev. 315, 402 P.2d 483 (1965), and the following statement in 12 Appleman Insurance Law & Practice § 7295 (Supp. 1968).
But where a liability policy made no reference to the application, and states that it embodies all agreements existing between the parties, it is conclusive that it was not based on statements in the application.
The quotation from Appleman is based solely on Harris v. State Farm Mutual Automobile Ins. Co., supra. In Harris the court was applying Tennessee law and it held that a clause in the policy identical with Section 18 in the policy in the case now before the Court was "conclusive that it is not based in any way upon the statements in the application." It was held that the insurer could not rely on the false statement in the application. The Harris case is distinguished from the case before us for two reasons (1) Tennessee has a statute providing that written or oral representations in the application for insurance shall not defeat the policy unless the misrepresentation is made with actual intent to deceive and (2) the representation in the application in Harris was that the driver had a physical defect of which he was not aware, and the opinion stated that the false statement was not a fraudulent representation. The court said, "Of course, a fraudulent representation in the application inducing the execution of a policy of insurance can generally be availed of to avoid the policy, just as any contract can be avoided for fraud ab initio." We conclude therefore, that neither Harris, nor the quotation from 12 Appleman, Insurance Law & Practice § 7295 (Supp. 1968) have application here. Universal Underwriters, supra, is based on Harris and we must assume that the Nevada Court found no fraud involved, otherwise it would not have followed Harris. The document signed by Insured in the case before us is clearly an application for insurance and is so designated. It gives full information as to the coverages in the policy, the name of the insurer, and insurer's agent. These were absent in Universal Underwriters, supra and lead the Nevada court to express doubt that what the Insured signed was in fact an application for insurance.
In State Farm Mutual Automobile Ins. Co. v. Butler, 203 Va. 575, 125 S.E.2d 823 (1962), the court considered the effect of an "integration" clause similar to Section 18 of the policy issued Insured and stated:
Here we are concerned with whether, as a matter of law, the parties entered into any valid and binding contract of coverage for the automobile described in the *638 policy. According to the uncontradicted evidence before us, the binder coverage and the policy upon which the plaintiff relies were procured through the fraud of the insureds, the Ritchies, and hence were void. Whether the Ritchies were guilty of fraud in procuring this coverage depends not upon the terms of the policy, but upon proof of matters beyond and outside that instrument. (125 S.E.2d at 826)
The Butler case was followed in State Farm Mutual Automobile Ins. Co. v. Lee, 343 F.2d 55 (5th Cir.1965), where the court said:
It has long been a well settled general rule that an intentional misrepresentation of a material fact by the applicant for a policy, relied upon by an insurer, is a ground for rescission. Apperson v. United States Fidelity and Guaranty Co., 5 Cir.1963, 318 F.2d 438. (343 F.2d at 57)
The false representations made by Insured in his application were more flagrant than in any case brought to our attention. Several of the cases where the courts permitted the insurer to rescind the policy for such misrepresentation involved only one false statement. Insured made five false statements. The proof, including the testimony of Insured, shows that these representations were knowingly made. They were material to the risk, and there is no doubt that they were made to induce the issuance of the policy, and did in fact induce the Insurance Company to issue the policy. We therefore hold that the trial court erred in sustaining the motion to exclude the evidence and dismiss the suit. The cause is reversed and remanded for further proceedings consistent with this opinion.
Reversed and remanded.
JONES, BRADY, INZER and ROBERTSON, JJ., concur.